2025 IL App (2d) 250039-U
Nos. 2-25-0039 & 2-25-0040 cons.
Order filed August 4, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Se. E.G., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 22-JA-78 |
| | ) | |
| (The People of the State of Illinois, Petitioner-Appellee, v. Ariel E., Respondent-Appellant). | ) | Honorable |
| | ) | Kathryn D. Karayannis, |
| | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* Si. E.G., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 22-JA-79 |
| | ) | |
| (The People of the State of Illinois, Petitioner-Appellee, v. Ariel E., Respondent-Appellant). | ) | Honorable |
| | ) | Kathryn D. Karayannis, |
| | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1  *Held*: Under the procedure set forth in *Anders*, there are no issues of arguable merit on appeal. We therefore grant court-appointed counsel's motion to withdraw as counsel on appeal and affirm the judgment of the circuit court terminating respondent's parental rights to the minors.

¶ 2    On January 2, 2025, the circuit court of Kane County found respondent, Ariel E., unfit to parent her two minor children, Se. E.G. (born May 14, 2017) and Si. E.G. (born February 12, 2020). The same day, the trial court determined that it was in the best interests of the minors that respondent's parental rights be terminated.[1] Respondent separately appealed the trial court's order with respect to each minor.

¶ 3    The trial court appointed counsel to represent respondent on each appeal. We granted appellate counsel's motion to consolidate the appeals. Subsequently, appellate counsel moved to withdraw from both appeals pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1968). See *In re Alexa J.*, 345 Ill. App. 3d 985, 987-90 (2003) (holding that *Anders* applies to termination-of-parental-rights cases and outlining the procedure to be followed when appellate counsel seeks to withdraw). This court denied the original *Anders* motion without prejudice and allowed counsel to file a brief in support of respondent's appeal or to file a second *Anders* motion that complied with *In re Alexa J.*, 345 Ill. App. 3d 985, 988 (2003). On June 10, 2025, counsel filed a second *Anders* motion, and, on that date, the clerk again notified respondent that within 30 days she could file additional matters or reasons why the motion to withdraw should not be allowed. Respondent again has not filed a response. Accordingly, after examining the record and counsel's second motion and memorandum in support thereof, we grant the motion to withdraw and affirm the judgment. Counsel avers that, after a full examination of the record, she is unable to identify any meritorious issues to be raised on appeal which would warrant relief by this court. Counsel has incorporated into her motion a memorandum outlining one potential issue, but

---

[1]Also on January 2, 2025, the trial court found the minors' father, Tony G., Jr., unfit to parent each minor. Tony appealed separately. Although Tony is not a party to this appeal, information related to him is included in this decision, where necessary, to provide context to respondent's appeal.

ultimately concludes that the potential issue lacks merit. Counsel further avers that she provided respondent with a copy of the motion and that she notified respondent of her opportunity to present additional material to this court within 30 days. After carefully reviewing the record and counsel's motion, we agree that there are no issues which would warrant relief by this court. Accordingly, we grant appellate counsel's motion to withdraw and affirm the judgments of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5      On January 31, 2022, the Illinois Department of Children and Family Services (DCFS) received a report that Tony was observed "yanking and pulling [Se. E.G.] *** by the collar." It was further noted that Tony had threatened Se. E.G. that people would beat him if Se. E.G. did not behave. Following the January 31, 2022, report to DCFS, the family was involved in intact services with DCFS. On May 12, 2022, a DCFS worker witnessed Tony pull and yank on Se. E.G.'s arm. On May 26, 2022, Tony struck Se. E.G. in the face. At that time, Se. E.G. and Si. E.G. were taken into protective custody. After protective custody was taken, Se. E.G. was transported to the hospital where he was observed to have "bruising and unexplained injuries." DCFS further noted upon taking the children into protective custody that respondent and Tony had failed to engage in intact services, there was domestic violence in the home between respondent and Tony, and that respondent had a history of mental health issues. On May 27, 2022, the State filed a petition for adjudication on behalf of each minor. With respect to Se. E.G., the petition alleged that he was abused pursuant to sections 2-3(2)(i) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(2)(i), (ii), (v) (West 2022)) and neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)). With respect to Si. E.G., the petition alleged that he was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)).

¶ 6    At a shelter care hearing on May 31, 2022, respondent and Tony stipulated that probable cause existed to proceed with the petitions for adjudication, thereby requiring the urgent and immediate removal of the minors from the home. The court placed the minors in the temporary custody of DCFS and scheduled an adjudicatory hearing. The court also appointed CASA of Kane County as the guardian *ad litem* (GAL) for the minors. The minors were initially placed with Maribel G. and Joel G., their paternal aunt and uncle. The parents were allowed supervised visitation at the discretion of DCFS.

¶ 7    At a hearing on August 9, 2022, respondent stipulated to a factual basis submitted by the State. At a hearing on September 6, 2022, Tony also stipulated to the factual basis and the trial court found the minors to be abused and neglected. At a dispositional hearing on September 27, 2022, the trial court found that it was in the best interests of the minors that they be made wards of the court. Further, the court determined that, for reasons other than financial circumstances alone, respondent was unfit and unable to care for, protect, educate, train, supervise, or discipline the minors. The court advised respondent that she would need to participate in services to address the reasons the case came into care, including individual therapy, a psychiatric evaluation, medication compliance, parent education and coaching, and domestic violence services. The court further advised respondent that she would need to maintain stable housing and submit to random drug drops. The court set the permanency goal as return home in 12 months.

¶ 8    A status hearing was held on January 10, 2023. At that time, respondent was engaged in individual therapy, domestic violence services, and parent coaching. Although respondent was engaged in parent coaching, it was noted that she was not making progress in actual parenting. Additionally, at the January status hearing, the trial court also noted that Se. E.G. had been placed at Hephzibah House, a residential facility, at the end of November 2022.

¶ 9    On April 11, 2023, a status hearing was held. At that time, the court noted that respondent was engaging in services, however, she was making minimal progress. Her counselor reported that while respondent was participating in individual therapy, there was little progress being made. DCFS received approval to conduct a psychological evaluation to ensure that it was addressing respondent's needs appropriately. Further, the court noted that while it appreciated that respondent was engaged in services, it needed to see her make progress. Her lack of progress in parent coaching was also of concern to the court on this date. The court also noted that Se. E.G. remained in Hephzibah House and was struggling. Additionally, Se. E.G. needed surgery on his feet.

¶ 10    A series of permanency-review hearings was held between May 2023 and May 2024. During that time, respondent was twice found to have made reasonable efforts but never made reasonable progress.

¶ 11    At a permanency review on November 16, 2023, the trial court noted that respondent had made some progress, but it was neither reasonable nor substantial. Respondent had participated in drug drops. Respondent was on a waiting list for domestic violence counseling and had been participating in counseling through the Elgin Police Department, however DCFS did not have reports from those counseling sessions. Although respondent was attending parenting education and coaching sessions, she was not applying the skills she had learned.

¶ 12    On February 29, 2024, the court held a status hearing. The court noted that respondent had not been consistent with individual therapy: she had missed 5 of 12 sessions and was going to be discharged if she continued to miss appointments. Further, the court noted its concern with her progress and stated that she needed to apply what she was learning. Although the visitation with the children was going relatively well, the court noted that the minors were sometimes emotionally dysregulated after visits with respondent. Family therapy was deemed inappropriate at that time,

and respondent was ordered to attend a parenting capacity assessment. The court order reflects that it "need[ed] to see a lot better progress by [respondent] at the next court date."

¶ 13    At a permanency-review hearing on May 13, 2024, the State asked the court to find that respondent was not making progress and to set a substitute care goal for the minors. Respondent was not present at this court date but was represented by her attorney. According to counsel for respondent, respondent was unable to attend the permanency review hearing because she had mis-calendared the court date. Counsel did not request a continuance. At the hearing, the State noted that although respondent had made some efforts, she was unable to make reasonable progress in those services. It stated that "there are still deficiencies that need to be addressed and it's questionable whether she is able to address them." The attorney for CASA concurred with the State's argument and noted that temporary custody had been in place for approximately two years with very little progress. Counsel for respondent noted that respondent had completed her parent coaching and requested that the court keep the goal at return home. The trial court considered the parties' arguments and noted that respondent had been making some efforts. However, it noted that over two years into the case, respondent had not made sufficient progress for the court to find that the children could be home in a reasonable amount of time. It also noted that respondent was still taking substance abuse counseling and had not completed those courses. Further, respondent had multiple serious mental health diagnoses and failed to complete individual therapy, as she was discharged for missing sessions. Reports from her visitation sessions suggested that respondent cannot address the minors' behavioral concerns. Her parenting capacity assessment showed "not insignificant concerns" regarding respondent's ability to process information and address her children's needs. Additionally, respondent did not have appropriate housing for the minors. The

court therefore changed the permanency goal to substitute care pending determination of a petition to terminate parental rights.

¶ 14    On May 30, 2024, the State filed separate petitions to terminate parental rights with respect to each minor. The State cited the following grounds why respondent is an unfit person to have a child: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failure to protect the minors from conditions within their environment that were injurious to the minors' welfare (750 ILCS 50/1(D)(g) (West 2022)); (3) failure to make reasonable progress towards the return of the minors to her during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(ii) (West 2022)); and (4) inability to discharge parental responsibilities, as supported by competent evidence of a mental impairment or mental illness and sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period (750 ILCS 50/1(D)(p) (West 2022)). With respect to the third ground, the State listed two separate nine-month periods: (1) September 7, 2022, through June 7, 2023, and (2)  June 8, 2023, through March 8, 2024. The State further alleged that it was in the best interests and welfare of the minors that respondent's parental rights be terminated. A hearing on the State's petitions to terminate respondent's parental rights was held over several dates, beginning on September 30, 2024.

¶ 15    At the unfitness phase of the termination proceeding, the State called four witnesses: (1) respondent; (2) Tony; (3) Stephanie Sanders, a caseworker for DCFS; and (4) Julie Traskaski, a parent support specialist with ROAN Solutions. The State also submitted several exhibits, including multiple client service plans, certified records and reports from various agencies, and the integrated assessment. In addition, the State asked the court to take judicial notice of various

documents, including the minors' birth certificates, the temporary custody orders, the adjudicatory orders, the dispositional orders, and the permanency review orders. After the State rested, respondent testified on her own behalf.

¶ 16    On January 2, 2025, following arguments by the parties, the trial court issued its ruling relative to the issue of respondent's unfitness. Initially, the court noted that based on the evidence, the testimony, the exhibits, and the matters of which it had taken judicial notice, the State had proven beyond clear and convincing evidence that respondent is unfit to have a child based on the first three grounds set forth in the petitions to terminate parental rights. The trial court declined to find that the State had proven by clear and convincing evidence that respondent was unable to discharge her parental responsibilities, as supported by competent evidence of a mental impairment or mental illness.

¶ 17    The court noted that respondent testified that she had been in a relationship with Tony for over 10 years and she would leave and return to the relationship despite Tony's abuse because she wanted her children to be raised by two parents. The court questioned whether respondent could show a reasonable degree of responsibility when she placed her desire to have her children raised by two parents above her desire to protect her children or herself from the abuse that was being inflicted upon them.

¶ 18    Further, the court found that respondent was not demonstrating reasonable progress in her services because she could not identify any reason for the children being placed in DCFS care other than Tony's abuse of Se. E.G. and the fact that "there was not the best living situation." It noted that based on respondent's testimony, there were two to three years before the children were placed in care that respondent saw Tony hit, grab, and pull Se. E.G. Respondent saw bruising on Se. E.G., and he told her it was because Tony was hitting him. The court also highlighted

respondent's inconsistent testimony, stating that she would protect the children from Tony's abuse by "always having them with [her]" while also stating that she would leave the children with Tony while she was at work. Respondent also testified that when Tony would hit Se. E.G., she would "[get] in his face," and push him out of the way or get Se. E.G. out of the way. Respondent testified that she was aware of Tony's substance abuse issues, stating that he often "raged up," leading respondent to call the police. The court noted that respondent obtained an order of protection but blamed her attorney for not giving her the court date and letting the order of protection expire. It stated that this "shows a lack of responsibility for herself and her children."

¶ 19 Additionally, the court noted that respondent was unsuccessfully discharged from ROAN Solutions due to missing therapy sessions and she had not returned to individual therapy. Further, respondent stated that she could not attend domestic violence services because the classes were at an inconvenient time. She stated there were no buses and she could not drive. Respondent did not tell her caseworker about her transportation issues. Respondent added that she did not travel at night and she did not feel comfortable talking about her issues with others, which is why she chose not to attend the domestic violence group counseling. She instead attended domestic violence classes at the Elgin Police Department and testified that she was successfully discharged but provided no proof.

¶ 20 The court noted that respondent did do her parenting education and some parent coaching. She testified that she struggled with "follow-through with [Si. E.G.]," but that the only thing she learned in parent coaching was that her child "is not the boss." Respondent further testified that the parent coach belittled and disrespected her, which the court found to show that she was not receptive to feedback. The trial court also determined respondent's feelings of disrespect by the parent coach were relevant to her parenting capacity assessment, which stated respondent had

persecutory ideations. The court also emphasized its belief that respondent's tone during her testimony about parent coaching was "mocking, curt, and snippy." On the other hand, the court found the parent coach's testimony to be credible. Additionally, the court noted that in respondent's parenting capacity assessment, respondent's attachment to the minors was characterized as "disorganized," which meant that respondent "had rapid shifts in moods from high to low exhibiting attentive responsibilities *** but then giving ambivalent responses, resulting in it being hard for the children to know what to expect and having emotional and psychological effects on the children." The trial court further noted that during respondent's visitation time with the children, she at times left the visits early, including when there was parent coaching, and often had difficulty keeping the children focused.

¶ 21 In sum, the trial court found that respondent did not "make any progress in [the] services that were important and necessary to be a safe and fit parent" during either of the nine-month periods. Accordingly, the court found that respondent failed to show a reasonable degree of interest, concern, or responsibility as to the minors' welfare.

¶ 22 At the beginning of the best-interests phase, the court, at the State's request, admitted CASA's best-interests report. In the report, CASA recommended that respondent's parental rights be terminated to allow the minors to achieve their goal of permanency. The State also called Sanders to testify. Respondent did not present any further evidence.

¶ 23 Following argument by the parties, the trial court concluded that it is in the best interests of the minors that respondent's parental rights be terminated. The court acknowledged that although children have Hispanic heritage, they are not placed in Hispanic homes. However, the Hispanic heritage was with relation to Tony, not respondent, and there was no testimony that respondent or Tony took efforts to foster the minors' education about their heritage. There was

testimony regarding efforts made by the foster parents to enrich the minors' understanding of their heritage. The court further noted that both of the children are in stable and loving homes. Se. E.G. has resided in his current foster placement for almost six months and is doing very well in his placement. The court noted that Se. E.G. does seem to want contact with his mother, which the foster placement is willing to permit. Like Se. E.G., Si. E.G. is also in a stable and loving foster home willing to cultivate a relationship with his mother. The court found that respondent is unable to provide a safe, stable home for the children, and emphasized that the "children are thriving in [their current] homes, and the foster parents are willing to maintain a relationship between the children." The court therefore granted the State's petitions to terminate respondent's parental rights and changed the permanency goal to adoption. A written order reflecting the court's decision was entered for each minor. This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    The Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) sets forth a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Initially, the State has the burden of proving by clear and convincing evidence that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2), (4) (West 2022); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the trial court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the minor's best interest. See 705 ILCS 405/2-29(2) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 352, 366-67 (2004). On appeal, a court of review will not disturb a trial court's finding as to parental unfitness or a minor's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. A decision is against the manifest weight of the evidence only if an opposite conclusion

is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 26 Appellate counsel's motion states that she has thoroughly reviewed the record and has concluded that there are no meritorious issues to be raised on appeal. In accordance with *Alexa J.*, 345 Ill. App. 3d at 987, counsel has identified one potential issue she has considered raising, but which she found not arguably meritorious. That issue is whether respondent's presence at the permanency review hearing would have prevented the permanency review goal from being changed to substitute care pending determination of a petition to terminate parental rights. Otherwise, counsel states that her review of the record identified no justiciable issue regarding procedural due process or issues of evidentiary introduction, admissibility, or sufficiency.

¶ 27 Specifically, appellate counsel suggests that had respondent been present at the May 13, 2024, permanency review hearing, the court may not have changed the permanency goal to substitute care pending determination of a petition to terminate parental rights. However, counsel concedes that "it is hard to argue that [respondent's] presence would have yielded a different result," as respondent was not present because she mis-calendared the date, there was no indication that she would have requested a continuance, her attorney was present, and her attorney argued that respondent had made reasonable efforts and progress and that the goal should remain return home. Further, the trial court's determination was based on various reports and prior court events where respondent was present, and there was no evidence that the trial court's determinations at the May 13, 2024, permanency review hearing were not reflected in the reports in the record.

¶ 28 We agree and conclude that there is no arguable merit to a claim that it was against the manifest weight of the evidence for the trial court to conclude that respondent was unfit or that the termination of respondent's parental rights was in the minors' best interests. Based on the

testimony and other evidence presented, we have no basis for finding that a conclusion opposite that of the trial court is clearly evident or that the trial court's decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Accordingly, there is nothing to indicate that the trial court erred in finding that it was in the best interests of the minors to terminate respondent's parental rights.

¶ 29                                          III. CONCLUSION

¶ 30     After examining the record, the motion to withdraw, and the supporting memorandum of law, we agree with appellate counsel that respondent's appeal presents no issues of arguable merit. Thus, we grant the motion to withdraw and affirm the judgments of the circuit court of Kane County.

¶ 31     Affirmed.